# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **PATRICK ROAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:12-cv-00982** |
| **v.** | ) | **Judge Sharp / Knowles** |
| | ) | |
| **SONIC RESTAURANTS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court upon Defendant's Motion for Summary Judgment. Docket No. 61. Defendant has contemporaneously filed a supporting Memorandum of Law, a Statement of Undisputed Facts, the Declaration of Gary Kuhn, Plaintiff's Deposition, the Declaration of Dean Mason, the Declaration of John Maternowski, and the Minimum Wage Table. Docket Nos. 62, 62-1, 62-2, 62-3, 62-4, 62-5, 63.

Plaintiff has filed a Response to Defendant's Motion. Docket No. 69. Attached to Plaintiff's Response are numerous Exhibits, the majority of which consist of handwritten notes, and none of which is verified or in a form required by Fed. R. Civ. P. 56. *See* Docket Nos. 69-1 - 69-12. Plaintiff has also filed a Response in Opposition to Defendant's Statement of Undisputed Facts. Docket No. 68. Attached to that Response are extensive Exhibits, again the majority of which consist of handwritten notes, and none of which is verified or in a form required by Fed. R. Civ. P. 56. *See* Docket Nos. 68-1 - 68-25.

Defendant has filed a Reply to Plaintiff's Response. Docket No. 73. Attached to that

Reply, Defendant has submitted the Second Declarations of Gary Kuhn and John Maternowski. Docket Nos. 73-2, 73-3. Defendant has also filed a Reply to Plaintiff's Response to its Statement of Undisputed Facts. Docket No. 74.

To the extent that Plaintiff's submitted Exhibits may constitute "additional facts," Defendant has filed a Reply to those "facts." Docket No. 75. As part of its Reply to those "facts," Defendant has submitted a Second Declaration of Dean Mason, a notarized Amendment Sheet from Plaintiff's Deposition, and the Exhibit Court Reporter's Certificate. Docket Nos. 75-1 - 75-3. Plaintiff has filed a "Response" to this Reply. Docket No. 76. Attached to his "Response" is a handwritten letter from Plaintiff to the undersigned, as well as 56 pages of "Exhibits," none of which is verified or in a form required by Fed. R. Civ. P. 56. *See* Docket Nos. 76-1, 76-2.

Plaintiff filed this pro se, in forma pauperis action alleging that Defendant discriminated against him because he is a "Black American," in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., and the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1), by reducing his work hours, which made him ineligible for a bonus. *See* Docket No. 1. Plaintiff seeks $12.5 million in punitive damages. *Id.*

Defendant filed the instant Motion arguing it is entitled to summary judgment because Plaintiff cannot establish his claims under Title VII or the EPA because color had nothing to do with the reduction of his work hours. Docket No. 61. Defendant argues that it had a legitimate, non-discriminatory reason for reducing Plaintiff's work hours, which Plaintiff cannot rebut: namely, Plaintiff's hours were reduced because of reduced sales volume at the Sonic where he worked and because of his inflexible work schedule. *Id.* Defendant also argues that Plaintiff

cannot establish a claim under the EPA "because that statute does not apply to color

discrimination and because such a claim is barred by the statute of limitations." *Id.*

For the reasons to be discussed below, the undersigned finds that there are no genuine

issues as to any material fact and that Defendant is entitled to a judgment as a matter of law.

Accordingly, for the reasons set forth herein, the undersigned recommends that Defendant's

Motion for Summary Judgment (Docket No. 61) be GRANTED.

## II. Undisputed Facts[1]

Defendant operates a chain of franchised, drive-in restaurants operating under the brand

name "Sonic Drive-In." Docket No. 62-1, First Declaration of Gary Kuhn ("First Kuhn Dec."), ¶

2. These restaurants offer a variety of menu items including hamburgers, soft drinks, and ice

cream desserts. *Id.* The menu selections are ordered by customers over intercoms and are served

by car hops. *Id.* Customers have the choice of carrying the food off premises or consuming it in

their vehicles parked under the drive-in's canopies. *Id.*

In 1994 or 1995, then General Manager Dean Mason hired Plaintiff as a part-time cook at

the Ashland City, Tennessee Sonic Drive In ("the Drive In"). Docket No. 62-3, First Declaration

of Dean Mason ("First Mason Dec."), ¶ 2.[2] In 2003, Plaintiff was promoted to Assistant

Manager. Docket No. 62-2, Plaintiff's Deposition ("Plaintiff's Dep."), p. 46-47. Shortly

thereafter, John Maternowski became the General Manager of that location, was Plaintiff's direct

supervisor, and gave Plaintiff a $1 per hour raise. Docket No. 62-4, First Declaration of John

---

[1] Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

[2] At the time, that location was not owned by Defendant, but rather, was owned by a franchisee. *Id.*

Maternowksi ("First Maternowski Dec."), ¶ 1; Plaintiff's Dep., p. 46-47.  As the General

Manager, Mr. Maternowski was the highest level employee working at that location and was

responsible for the overall operations of the Drive-In, including enduring its overall profitability,

creating employee work schedules, controlling labor costs, supervising employees, maintaining

equipment, ordering food and supplies, customer service, etc.  First Maternowski Dec., ¶ 3.  Mr.

Maternowski is held accountable for the Drive-In's profitability, and his income is tied to it.  *Id.*

Mr. Maternowski reported to Mr. Mason.  First Mason Dec., ¶ 2.

Mr. Mason has been a Multi-Unit Partner responsible for the overall operations of several

Drive-In's, including the Ashland City, Tennessee location, since 1996.  *Id.*, ¶ 3.  As a Multi-Unit

Partner, Mr. Mason oversees operations, assists in addressing customer and employee

complaints, and is responsible for the overall financial performance of the six locations he

manages.  *Id.,* ¶ 4.  Mr. Mason's income is based upon the profitability of the Drive-Ins he

manages.  *Id.*, ¶ 6.

Gary Kuhn is Defendant's Director of Operations.  First Kuhn Dec., ¶ 1.  As the Director

of Operations, Mr. Kuhn is responsible for the overall operations and financial performance of 57

of Defendant's Drive-Ins, including the Ashland City, Tennessee, location, as well as overseeing

the acquisition and opening of new Drive-In locations.  *Id.*, ¶¶ 3, 4.  Mr. Mason reports to Mr.

Kuhn.  *Id.*,  ¶ 4.

Defendant acquired the Ashland City, Tennessee location on September 1, 2005.  First

Mason Dec., ¶ 3.  Upon its acquisition of that location, Defendant hired (retained) General

Manager John Maternowski and Multi-Use Partner Dean Mason, as well as other employees of

that location, including Plaintiff.  First Kuhn Dec., ¶ 4.  Plaintiff was hired (retained) as an

Assistant Manager and has been employed by Defendant in the same position at the same location since that time. Mason Dec., ¶ 3; Plaintiff's Dep., p. 46-47.

At each location, Defendant employs a General Manager, Co-Manager(s), Associate Manager(s),[3] and Crew Members. First Maternowski Dec., ¶ 4. General Managers and Co-Managers are salaried, exempt employees, meaning that Defendant pays them the same semi-monthly salary regardless of how many hours they work. *Id.*, ¶ 5. Associate Managers are not salaried employees, and they are not exempt; they are entitled to overtime pay when earned, so the more an Associate Manager works, the more he gets paid. *Id.*, ¶ 6. Crew Members serve various functions within the Drive-In, such as cooks, car hops, fountain, front swamp, back swamp, etc. *Id.*, ¶ 7. Crew Members are hourly, non-exempt employees like Associate Managers and must be paid more when they work more hours and when they earn overtime. *Id.* Crew Members, however, are paid a lower wage than Associate Managers. *Id.* Thus, it is less expensive for the Drive-In when a Crew Member works than it is when an Associate Manager works. *Id.*

The Drive-In is open for business seven days per week from 6:00 am until 11:00 pm or midnight. First Maternowski Dec., ¶ 11. General Managers, Co-Managers, and Associate Managers are generally required to have a flexible schedule, allowing them to work whenever the Drive-In is open, at the discretion of management. *Id.*, ¶ 12. The General Manager and the Co-Managers generally work during the day because they have administrative responsibilities that must be completed during the day while Defendant's corporate office personnel are working. *Id.*,

---

[3] The terms "Associate Manager" and "Assistant Manager" appear to be used interchangeably throughout the submitted Declarations. The terms used herein are as they appear in the cited Declarations.

¶ 11. The General Manager and/or the Co-Managers may also work one or two evenings per week. *Id.* Since the General Manager and the Co-Managers generally work during the day, Associate Managers are almost always needed to work in the evenings so that a manager will be on duty at all times. *Id.*, ¶ 15. Associate Managers working in the evening must be proficient with Defendant's computer system, because, unlike during the day, they are often the only management employees at the location for many hours. *Id.*, ¶ 16.

Employee work schedules are prepared to meet the business demands of the Drive-In, are not guaranteed, and may be changed at the discretion of management. *Id.*, ¶ 12. Employees are not guaranteed a particular schedule or particular number of hours. *Id.* Employee work schedules are driven by the employee's availability, the sales volume at the location, the employee's job position, and the employee's skills. *Id.*, ¶ 13.

Pam Carter, a white female, began working at the Drive-In in 1992 and was promoted to Assistant Manger in 1994. First Kuhn Dec., ¶ 5. Like Plaintiff, Ms. Carter became an Associate Manager at the Ashland City, Tennessee location when Defendant acquired it in September 2005, and has held that position since that time. *Id.*

Beginning in 2008, the Ashland City, Tennessee location also employed Timmy "T.J." Baskin, a white male, as an Associate Manager. First Mason Dec., ¶ 5. On August 20, 2009, following Mr. Baskin's termination, Defendant hired Jacob Guinn, a white male who had previously worked as an Assistant Manager at another Drive-In location, to replace Mr. Baskin as an Associate Manager. *Id.* Mr. Guinn generally worked the same schedule that Mr. Baskin had worked. Plaintiff's Dep., p. 106-107. Mr. Guinn worked at as an Associate Manager at that location until he resigned in August 2010. First Mason Dec., ¶ 5.

Since 2007, in addition to working for Defendant, Plaintiff has also held another job working at UPS Monday through Friday from 5:30 pm to 10:00 pm and is therefore unavailable to work at the Drive-In after 4:00 pm during those days. Plaintiff's Dep., p. 52-53, 78. On Sundays, Plaintiff is generally willing to work between 11:00 am and 3:00 pm because of his desire to attend church. First Maternowski Dec., ¶ 9. With the exception of Plaintiff, Mr. Maternowski has never employed an Associate Manager with a second job because he needs his Associate Managers to generally be available at all times. *Id.,* ¶ 14. Between 2007 and the last week of September 2009, Plaintiff generally worked for Defendant Monday through Saturday from 5:30 am until 12:00 pm or 1:00 pm, "depending on when [Defendant] needed [him]." Plaintiff's Dep., p. 53, 69. Because Plaintiff informed Mr. Maternowski that he did not want to learn Defendant's new computer system and the evening manager must be proficient with the computer system, Plaintiff was not scheduled to work during the one evening he was available: Saturday. First Maternowski Dec., ¶ 16.

Neither Ms. Carter nor Mr. Guinn worked a second job, and both were generally available to work any time. *Id.*, ¶ 10. Ms. Carter worked nights typically from anywhere between 3:00 pm and 5:00 pm until the Drive-In closed. Plaintiff's Dep., p. 76-78. Plaintiff was unavailable to work these hours because of his second job at UPS. *Id.* Mr. Guinn generally worked the shift from 2:00 pm until 11:00 pm or midnight. *Id.*, p. 68, 79. Plaintiff was likewise unavailable to work these hours because of his second job at UPS. *Id.*

Mr. Maternowski tried to maintain a consistent schedule where possible, but accommodated requests for schedule changes and time off when he could. First Maternowski Dec., ¶ 10.

In order to operate profitably, Defendant's Drive-Ins must control their labor costs. First Kuhn Dec., ¶ 11. When sales volume at a location decreases, the labor costs at that location must be reduced by decreasing the number of hours worked by non-exempt employees such as Associate Managers and Crew Members, scheduling lower paid employees such as Crew Members to work instead of Associate Managers, and/or increasing the number of hours worked by salaried, exempt employees such as Co-Managers and the General Manger. *Id.* Plaintiff admits that when the Drive-In is slow, it is common to cut labor costs by cutting employee hours. Plaintiff's Dep., p. 118-119.

Traditionally, the sales volume at the Drive-In begins to decline in late August when kids return to school, and continues to decrease throughout the colder months. First Maternowski Dec., ¶ 17. Thus, the work hours of non-salaried, non-exempt employees (Associate Managers and/or Crew Members) must be reduced to align with the decrease in sales volume. *Id.*

Prior to 2009, before the worst of the recession hit, when the Drive-In business was slow, Mr. Maternowski was fortunately able to generally maintain Associate Manager hours, even though doing so was more costly than scheduling a salaried Co-Manager or a lower paid Crew Member, because the sales volume at the Drive-In generally remained high enough to do so and still retain the profitability of the Drive-In. First Maternowski Dec., ¶ 18. Plaintiff believes that, prior to the last week in September 2009, Mr. Maternowski had gone "above and beyond" to ensure that he had his hours. Plaintiff's Dep., p. 121-122.

Everything changed in the latter part of 2009 and 2010, when 2 events caused the Drive-In's profitability to be drastically reduced: the federal minimum wage increased, increasing the Drive-In's labor costs, and the recession hit the Drive-In very hard, significantly reducing its

sales volume.  First Maternowski Dec., ¶ 19.  Thus, beginning in the latter part of 2009, Mr.

Maternowski had to reduce labor costs in order to operate the Drive-In profitably.  *Id.*, ¶ 20.  Mr.

Maternowski therefore reduced the number of hours all Associate Managers worked and relied

more on the labor of exempt, salaried employees such as himself and the Co-Managers.[4]  *Id.*  At

that time, Plaintiff generally opened the Drive-In Monday through Saturday around 5:30 am.  *Id.*,

¶ 21.  Within a couple of hours, additional management came on shift (either one of the Co-

Managers or Mr. Maternowski).  *Id.*  Once the salaried management personnel arrived, Plaintiff

basically performed the work of a Crew Member, while still earning Associate Manager pay.  *Id.*

Thus, in order to reduce labor costs, Mr. Maternowski reduced Plaintiff's hours by having him

leave earlier, leaving a Co-Manager, Mr. Maternowki, and/or a Crew Member to work in his

place.  *Id.*, ¶ 22.  Beginning in late August 2009, Mr. Maternowski also stopped scheduling

Plaintiff to work on Friday mornings, and instead had either himself or one of the Co-Managers

open the restaurant, and they or a Crew Member worked the remainder of the hours that had

previously been worked by Plaintiff.  *Id.*

As the Drive-In's sales volume continued to decrease, Mr. Maternowski had to reduce

labor costs even further.  *Id.*  Thus, beginning the week of December 8, 2009, Mr. Maternowski

stopped scheduling Plaintiff to work on Wednesday mornings, and either he or one of the Co-

Managers opened the restaurant, and they or a Crew Member worked the remainder of the hours

that had previously been worked by Plaintiff.  *Id.*  Plaintiff agrees that when his hours were

reduced, they were given to Co-Managers Mr. Drummond and Mr. Powers.  Plaintiff's Dep., p.

---

[4] In 2009 and 2010, Defendant employed 2 Co-Managers at the Ashland City, Tennessee locations: Sam Powers and Matt Drummond.  First Maternowski Dec., ¶ 8.  Mr. Drummond had been working there since 2001, and Mr. Powers since 2005.  *Id.*

69-71, 110-111, 129-130.

Although Plaintiff's hours were reduced more than the other Associate Managers, their hours were also reduced. First Maternowski Dec., ¶ 23. The other Associate Managers' hours were not reduced as much as Plaintiff's because they did not have the inflexible schedule that Plaintiff had. *Id.* Whereas Plaintiff would not work in the late afternoon and evenings Monday through Friday because of his other job and Sunday because of his church commitments, both Ms. Carter and Mr. Guinn could and did. *Id.* Additionally, since Mr. Maternowski and the Co-Managers generally worked during the day, they could cover day time hours, rather than having an Associate Manager do it. *Id.* Since Mr. Maternowski and the Co-Managers generally worked during the day, however, Associate Managers Carter and Guinn were needed to work late in the afternoon and evenings, when Plaintiff, by his own choosing, could not work. *Id.* During this time, Plaintiff complained to Mr. Maternowski several times about the reduction in hours and Mr. Maternowski explained to him that they were reduced because of the need to reduce labor costs. *Id.*, ¶ 24; Plaintiff's Dep., 63-64. Mr. Maternowski asked Plaintiff to hold on until business improved. *Id.* As business improved, Mr. Maternowski was able to increase Plaintiff's hours. First Maternowski Dec., ¶ 26, Ex. C; First Kuhn Dec., ¶ 14, Ex. C.

Prior to May 2010, it did not occur to Mr. Maternowski to schedule Plaintiff to work on Saturday nights (the only night he could work) because Plaintiff had previously stated that he did not want to learn Defendant's computer system, and Associate Managers working in the evenings had to know how to operate the system. First Maternowski Dec., ¶ 25. Furthermore, Mr. Maternowski's observation of Plaintiff's performance as an Associate Manager was that he was not assertive enough with Crew Members and would, therefore, struggle managing the additional

Crew Members working at night, as opposed to the one or two Crew Members that he managed in the mornings. *Id.* Additionally, Plaintiff never told Mr. Maternowski that he wanted to and was willing to work on Saturday nights. *Id.*

In 2009 and 2010, both Mr. Maternowski and Mr. Mason experienced a significant loss in personal income because of the Drive-In's reduced sales volume and concomitant reduction in profitability. First Maternowski Dec., ¶ 27; First Kuhn Dec., ¶ 6. Mr. Maternowski's income was nearly 40% less than it had been in 2008. First Maternowski Dec., ¶ 27. Mr. Mason's income was nearly 50% less than it had been in 2008. First Kuhn Dec., ¶ 6. Neither Mr. Maternowski nor Mr. Mason had another job. First Maternowski Dec., ¶ 27; First Kuhn Dec., ¶ 6.

On May 10, 2010, Plaintiff complained to Mr. Kuhn about his reduced hours and asked why they had been reduced. First Kuhn Dec., ¶ 12; Plaintiff's Dep., p. 82-83, 91. Mr. Kuhn told Plaintiff that he would investigate the matter and get back with him, as he did not know whether this was true or the reasons for the reduction if true. *Id.* On May 18, 2010, Mr. Kuhn, Mr. Mason, and Mr. Maternowski met with Plaintiff to discuss his concerns regarding his reduced hours and to determine how Plaintiff's hours could be increased while still controlling labor costs at the Drive-In. First Kuhn Dec., ¶ 13; Plaintiff's Dep., p. 89. During the meeting, it was explained to Plaintiff that his hours had been reduced more than the other Associate Managers' because of his inflexible work schedule. First Maternowski Dec., ¶ 28. During the meeting, it was also explained to Plaintiff that if he was willing to learn the computer system, improve his managerial skills, and work on Saturday nights, Defendant would provide him with computer training, help him with his management skills, and train him to work on Saturday nights, which

would provide him additional hours.  *Id.*, ¶ 29; Plaintiff's Dep., p. 85-86.  Plaintiff agreed that he was willing to do all of this in order to work more hours.  *Id.*

Mr. Kuhn and Mr. Maternowski made the decision to schedule Plaintiff to work on Saturday evenings during the May 18, 2010 meeting, and did so because Plaintiff said that he wanted to work more hours and said that he was willing to work on Saturday evenings, which was the only viable and economically sound way of giving him more hours because (1) his second job and desire to attend church prevented him from working other nights, and (2) Defendant did not need an Associate Manager to work additional day time hours because the sales volume at the Drive-In did not warrant it, given that either the General Manager or a Co-Manager worked in the day time.  Docket No. 73-2, Second Declaration of John Maternowski (Second Maternowski Dec."), ¶ 2; Docket No. 73-3, Second Declaration of Gary Kuhn ("Second Kuhn Dec."), ¶ 2.  Since that time, Plaintiff has never indicated to either Mr. Kuhn or Mr. Maternowski that he did not want to work on Saturday evenings.  *Id.*

After the May 18, 2010 meeting, as a result of working Saturday nights, Plaintiff's hours increased, making him eligible for bonuses again and resolving his concerns about his bonus pay. First Maternowski Dec., ¶¶ 30, 31; First Kuhn Dec., ¶ 14, Ex. C; Plaintiff's Dep., p. 87, 94-96.

According to Plaintiff, Defendant did not discriminate against him prior to the last week in September 2009 and the alleged discrimination stopped on May 18, 2010.  Plaintiff's Dep., p. 45, 140, 143-145.  This period of time is the sole basis of Plaintiff's Complaint.  *Id.*  Plaintiff believes his hours were reduced because of his color because he was the "only black American" at the Drive-In and he never had a problem on the job.  *Id.*, p. 73, 150-153.  Outside of the fact that he was the "only black American" working at the Drive-In and a "feeling" he has, Plaintiff

has no other facts or evidence to support his contention that Defendant discriminated against him based upon his color.  *Id.*

Plaintiff admits that neither Ms. Carter nor Mr. Guinn had ever had a problem on the job either, and Plaintiff believes they both did a good job.  *Id.*, p. 73-76.  Plaintiff believes that his hours were reduced in order to give Mr. Guinn more hours so that he could become a Co-Manager, and that this was done to get Plaintiff to quit, but Plaintiff admits that this is just an "assumption" on his part and that no one had ever given him any indication that anyone wanted him to quit.  *Id.*, p. 79-80, 88, 98-99.  Plaintiff also believes that Mr. Maternowski gave Plaintiff's Friday and Saturday morning shifts to Co-Manager Mr. Drummond because Mr. Drummond is Mr. Maternowski's brother-in-law.  *Id.*, p. 97.

Plaintiff believes that both Mr.  Mason and Mr. Maternowski treated him fairly, did not discriminate against him, and did not treat anyone more favorably than they treated him until 2009.  *Id.*, p. 54, 58, 61.  According to Plaintiff, if Mr. Maternowski does not like an employee's work performance, he simply removes that employee from the work schedule, regardless of color.  *Id.*, p. 59, 99-100.  Plaintiff never witnessed Mr. Maternowski or Mr. Mason discriminate against anyone.  *Id.*, p. 58-59.

Neither Plaintiff's color nor his gender played any role in Mr. Maternowski's decision to reduce his hours; rather, this decision was based upon the need to reduce labor costs and Plaintiff's limited availability.  First Maternowski Dec., ¶ 32.

For many years, including 2008, 2009, and 2010, Defendant contracted with an outside vendor to perform "Mystery Shops."  First Kuhn Dec., ¶ 6.  This vendor sends unidentified shoppers to Defendant's Drive-In's at random times, four times per month.  *Id.*  The mystery

shoppers then evaluate the Drive-In on service, quality, cleanliness, carhop procedures, etc., and give the Drive-In a "mystery shop score." *Id.* Among other uses, Defendant uses these scores in connection with its "Mystery Shop Bonus Program for its Co-Managers and Associate Managers." *Id.*

Pursuant to the Mystery Shop Bonus Program in effect during 2009 and 2010, at the end of the month the particular Drive-In's scores for the month were averaged to create a "Monthly Cumulative Mystery Shop Average." *Id.*, ¶ 7. All eligible Co-Managers and Associate Managers received the same monthly bonus depending on the Drive-In's Monthly Cumulative Mystery Shop Average ("Average"). *Id.*, ¶ 8. Under the Bonus Program, the monthly bonus for eligible managers fluctuated between $0 and $600, depending on the particular Drive-In's Average. *Id.* Under the program, in order to be eligible for the bonus, an Associate Manager had to work at least 146 hours during the month. *Id.*, ¶ 9.

During the months in 2009 and 2010 when Plaintiff did not receive a Mystery Shop Bonus, it was either because the Drive-In's Average was not high enough for any Associate Managers or Co-Managers to receive it, or because Plaintiff did not work the requisite number of hours that month to be eligible to receive it. *Id.*, ¶ 10.

### III. Applicable Law and Analysis

### A. Local Rules 56.01(c) and (g)

With respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> **c. Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii)

agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by a citation to the record. ...

. . .

**g. Failure to Respond.** Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

As discussed above, although Plaintiff filed a Response in Opposition to Defendant's Statement of Undisputed Facts, neither that "response" nor its attachments are in a form required by Fed. R. Civ. P. 56. *See* Docket Nos. 68 - 68-25. Accordingly, Plaintiff has failed to properly respond to Defendant's Statement of Undisputed Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to properly respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Thus, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

## B. Motion for Summary Judgment

It would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to properly respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

[A] district court cannot grant summary judgment in favor of the movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met its

burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to

summary judgment as a matter of law.  *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C.  Title VII

### 1.  Generally

Title VII protects employees from discrimination on the basis of an individual's race, color, religion, sex, or national origin, and provides, in part:

> It shall be an unlawful employment practice for an employer--
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

Federal courts do not have jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge.  *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998) (*citing Ang v. Procter & Gamble Co.,* 932 F.2d 540, 544-45 (6th Cir. 1991)).  Thus, as a prerequisite to bringing a Title VII discrimination claim in federal court, a claimant is required to file a charge of discrimination or retaliation with the EEOC and is precluded from seeking judicial review until the Commission has made a final disposition of his claim.  42 U.S.C. §

2000e-5.  *See also, United Air Lines, Inc. v. Evans*, 431 U.S. 553, 554, 97 S. Ct. 1885, 1887, 52

L. Ed. 2d 571 (1977).  The wording of the allegations in the EEOC charge does not, however,

have to be exact or all-encompassing; rather, the court may consider allegations not explicitly

stated in the EEOC charge if those allegations could reasonably be expected to grow out of the

charge of discrimination.  *Tipler v E. I. du Pont de Nemours & Co.*, 433 F.2d 125, 131 (6th Cir.

1971) (*citing Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 465-66 (5th Cir. 1970)*; King v.*

*Georgia Power Co.*, 295 F.Supp. 943 (N.D. Ga. 1968)).

### 2.  Prima Facie Case of Discrimination

In order to establish a prima facie case of discrimination in violation of Title VII, a

plaintiff must prove that,

> 1) he is a member of a protected class;
>
> 2) he was qualified for her job and performed it satisfactorily;
>
> 3) despite his qualifications and performance, he suffered an
>    adverse employment action;[5] and
>
> 4) that he was replaced by a person outside the protected class or
>    was treated less favorably than a similarly situated
>    individual outside his protected class.

*Johnson v. University of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000) (*citing McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)) (footnote added).

A plaintiff may establish a claim of discrimination under Title VII either by introducing

direct evidence of discrimination, or by proving circumstantial evidence that would support an

---

[5] An adverse employment action is one that causes a materially adverse change in a term of employment, such as significantly diminished responsibilities, termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits. *See Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885-86 (6th Cir. 1996).

inference of discrimination. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000),

*citing Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997). "The direct evidence

and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or

the other, not both." *Id.*

Under the direct evidence approach, once the plaintiff introduces evidence that the

employer terminated him because of his protected status, the burden of persuasion shifts to the

employer to prove that it would have terminated the plaintiff even had it not been

motivated by discrimination. *Johnson*, 215 F.3d at 572, *citing Manzer v. Diamond Shamrock*

*Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (*citing Price Waterhouse v. Hopkins*, 490

U.S. 228, 244-45, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)).

If the plaintiff lacks direct evidence of discrimination, the circumstantial evidence

approach is used and the *McDonnell Douglas-Burdine* tripartite test is employed. *See*

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), as

later clarified by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67

L. Ed. 2d 207 (1981). The *McDonnell Douglas-Burdine* tripartite test requires the plaintiff to

first establish a prima facie case of discrimination. *Id.* If the plaintiff is able to do so, a

mandatory presumption of discrimination is created and the burden of production shifts to the

defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.

*Id.* If the defendant carries this burden, the plaintiff must then show that the proffered reason

was actually pretextual. *Id.* The plaintiff may establish pretext by showing that, 1) the stated

reasons had no basis in fact; 2) the stated reasons were not the actual reasons; or 3) the stated

reasons were insufficient to explain the defendant's action. *Id. See also, Cicero v. Borg-Warner*

*Automotive, Inc.,* 280 F.3d 579, 589 (6th Cir. 2002).   "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason."  *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

**D.  Equal Pay Act**

The Equal Pay Act ("EPA"), the EPA prohibits employers from paying an employee at a rate less than that paid to employees of the opposite sex for equal work.  *See* 29 U.S.C. § 206(d)(1).  "Equal work" does not require that the jobs be identical, only that there exist "substantial equality of skill, effort, responsibility and working conditions."  *Odomes v. Nucare, Inc.,* 653 F.2d 246, 250 (6th Cir. 1981).  Whether the work of two employees is substantially equal "must be resolved by an overall comparison of the work, not its individual segments."  *Beck-Wilson v. Principi,* 441 F.3d 353, 362 (6th Cir. 2006).

Once a plaintiff establishes a prima facie case under the EPA, the burden shifts to the defendant to prove that the wage differential was justified under one of the affirmative defenses outlined in the statute.  *Kovacevich v. Kent State Univ.,* 224 F.3d 806, 826 (6th Cir. 2000).  The statutory affirmative defenses are: a seniority system, a merit system, a system which measures earnings by quantity of quality of production, or *any other factor other than sex.  Id., citing* 29 U.S.C. § 206(d)(1) (emphasis added).  The EPA's catch-all provision "does not include literally *any* other factor, but a factor that, at a minimum, was adopted for a legitimate business reason."  *EEOC v. J.C. Penney Co., Inc.*, 843 F.2d 249, 253 (6th Cir. 1988) (emphasis in original).

After a defendant successfully raises one of the statutory affirmative defenses, the burden returns to the plaintiff, who bears the burden of producing evidence creating a triable issue of fact

that the reasons proffered by defendant were pretextual.  *Balmer v. HCA,* 423 F.3d 606, 613 (6th Cir. 2005).

## E.  The Case at Bar

Although Plaintiff contends that Defendant discriminated against him on account of his "color" by reducing his hours from late 2009 through mid 2010, thereby making him ineligible for a bonus, it is undisputed that his "color" had nothing to do with his reduced hours and resultant ineligibility for a bonus.  First Maternowski Dec., ¶ 32.  In fact, it is undisputed that Plaintiff's hours were reduced because the Drive-In's profitability was drastically reduced during that time due to the increase in the federal minimum wage and the decreased sales volume that occurred during the recession, and Defendant needed to control labor costs by reducing the number of hours worked by non-exempt employees, scheduling lower paid employees, and increasing the number of hours worked by salaried employees.  First Kuhn Dec., ¶ 11; First Maternowski Dec., ¶¶ 19, 20.  It is also undisputed that, although Plaintiff's hours were reduced more than the other Associate Managers, their hours were also reduced; and that Plaintiff's hours were reduced more because, due to his second job and his desire to attend church, he could not work in the late afternoons or evenings, when an Associate Manager was needed at the Drive-In. First Maternowski Dec., ¶ 23.  It is further undisputed that as business improved, Plaintiff's hours were increased, and that, after the May 18, 2010 meeting, Plaintiff's hours had increased so as to make him eligible for bonuses again and resolve his concerns about bonus pay.  First Maternowski Dec., ¶¶ 26, 30, 31Ex. C; First Kuhn Dec., ¶ 14, Ex. C.

Because it is undisputed that Plaintiff's "color" had nothing to do with his reduced hours and resultant ineligibility for a bonus, Plaintiff simply cannot establish that Defendant

discriminated against him on account of his "color."  Accordingly, Defendant is entitled to a judgment as a matter of law on this claim.

Additionally, Plaintiff does not allege that he was paid differently than other Associate Managers on account of his gender; accordingly, he cannot establish his EPA claim and Defendant is likewise entitled to a judgment as a matter of law on this claim as well.

## VI.  Conclusion

For the foregoing reasons, the undersigned concludes that there are no genuine issues as to any material fact and that Defendant is entitled to a judgment as a matter of law.  Accordingly, the undersigned recommends that Defendant's Motion for Summary Judgment (Docket No. 61) be GRANTED, and that this action be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge